**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**EASTERN DIVISION**

| | |
|---|---|
| JONATHAN BLITZ, )<br>MARLA TUCHINSKY, and as legal )<br>guardians of EB their minor child, )<br>      )<br>      Plaintiffs, )<br>      )<br>   vs. )<br>      )<br>The Honorable Janet Napolitano )<br>and )<br>The Honorable John S. Pistole, )<br>      )<br>      Defendants. ) | Civil Action No. 1:10cv930-WO-WWD |

<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS</u>

COMES NOW Plaintiffs, *pro se*, and by and through the undersigned

counsel, and respectfully offer the following in response to the Defendants'

Motion to Dismiss, and further state as follows:

## BACKGROUND

Plaintiffs are law-abiding citizens who travel by domestic and international

commercial airline frequently on business, and who plan to travel in the future

with their minor child[1].  Plaintiffs brought this action because Plaintiff Marla

Tuchinsky was twice subjected to highly invasive grope searches of her genitals

and undergarments when she refused virtual electronic strip searches when

---

[1] Plaintiff Tuchinsky was grope searched again at RDU Terminal Two on March 15, 2011, and the undersigned is booked on several flights between March 22d and 25th, 2011.  In addition, the undersigned and EB have just bought air tickets for domestic trip in May.  The standing issue alluded to by Defendants is based on nothing more than conjecture, and should be ignored by this Honorable Court.

departing from RDU Terminal Two in the fall of 2010.  Plaintiffs allege that the

searches themselves violate the Fourth Amendment to the United States

Constitution, but also allege that Plaintiffs' inability to ever raise a meaningful

challenge to Defendants' actions violates the Fifth Amendment to the United

States Constitution.

Defendants have claimed that their actions are immune from review in this

Honorable Court because they have internally distributed a secret document they

call an "SOP".  The SOP has never been served on Plaintiffs, and was never the

subject of any adversarial agency proceeding, nor a public notice and comment

process.  Defendants have stated in open court that the SOP is not a "Security

Directive" as that term is defined by statute.  Defendants now also claim that they

are not required to produce the SOP for review by this Honorable Court[2], or for

---

[2] Defendants claim that the SOP is immune from disclosure by virtue of 49 C.F.R. §
1520.1 *et seq.* which describes "Sensitive Security Information" ("SSI"), and
circumstances under which it may disclosed.  Plaintiffs strenuously object to this
Honorable Court's consideration of *ex parte* evidence, as grave due process issues are
raised by such a procedure.  Given that the undersigned Plaintiffs' counsel is an officer of
this and several other state and federal courts, and filing the SOP under seal or subject to
a Protective Order is routine and adequate to protect highly sensitive information,
Plaintiffs should be provided the SOP under seal or subject to a Protective Order.
    **Disclosure of the SOP to Plaintiffs' counsel is expressly provided for in 49
C.F.R. § 1520.9(a)(2)** which states in pertinent part that SSI may be disclosed only to
"covered persons who have a need to know" and 49 C.F.R. § 1520.11(a)(5) which states
that a covered person has a need to know "[w]hen the person needs the information to
represent a covered person in connection with any judicial or administrative proceeding
regarding those requirements."  49 C.F.R. § 1520.7(j) includes the preceding definition
from 49 C.F.R. § 1520.11 as a definition of a "covered person".  Thus, Plaintiffs' counsel
can and should be provided with a copy of the SOP, and the undersigned will comply at
all times with the requirements of 49 C.F.R. §§ 1520 *et seq.* with respect the SOP and/or
any other SSI provided to him in the course of the litigation of this case.

review by Plaintiffs' counsel, but offer it for *in camera, ex parte* review. Plaintiffs object to the Court considering this document *ex parte*, as Defendants claim this document to be dispositive of a key issue before the Court, and Plaintiffs will be unable to examine and make arguments relative to the content and form of this evidence.

Defendants claim that their unilateral creation of the SOP appropriately deprives Plaintiffs of any opportunity to marshal facts to support their constitutional claims. As explained herein, Supreme Court precedents mandate a strong presumption against the concept of an Article I agency making a unilateral administrative record, and then claiming the protection of a jurisdiction limiting statute. This Honorable Court should find that Defendants' actions and the SOP do not fall within the ambit of 49 U.S.C. § 46110, because, to construe the SOP as an "order" within the meaning of that statute results in a total deprivation of Plaintiffs' right to due process. For these reasons, Defendants' Motion to Dismiss should be denied.

**Question Presented:** Does this Honorable Court have subject matter jurisdiction over Plaintiffs' claims?

## CONSTRUCTION OF 49 U.S.C. § 46110 AS DEFENDANTS URGE WOULD RENDER THE STATUTE UNCONSTITUTIONAL

As a threshold matter, Plaintiffs are in precisely the right forum for the claims that we bring. Last year, in *Free Ent. Fund v. Public Co. Acctg. Oversight Bd.*, 130 S. Ct. 3138, 3151 (2010), the Supreme Court soundly rejected the Government's contention that there was no implied right to injunctive relief in the

district courts for unconstitutional agency conduct, and noted that there is a long

line of cases providing a cause of action to seek an injunction from a district court

to prohibit unconstitutional conduct by government actors, even in the face of a

jurisdiction limiting statute. *Free Ent. Fund v. Public Co. Acctg. Oversight Bd.*,

130 S. Ct. 3138, 3149-51 (2010).  The Supreme Court pointed out that:

> The Government does not appear to dispute such a right to relief as a
> general matter, without regard to the particular constitutional provisions at
> issue here. See, e.g., *Correctional Services Corp. v. Malesko*, 534 U.S. 61,
> 74, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001) (equitable relief "has long
> been recognized as the proper means for preventing entities from acting
> unconstitutionally"); *Bell v. Hood*, 327 U.S. 678, 684, 66 S. Ct. 773, 90 L.
> Ed. 939 (1946) ("[I]t is established practice for this Court **to sustain the
> jurisdiction of federal courts to issue injunctions to protect rights
> safeguarded by the Constitution**"); see also *Ex parte Young*, 209 U.S.
> 123, 149, 165, 167, 28 S. Ct. 441, 52 L. Ed. 714 (1908). **If the
> Government's point is that an Appointments Clause or separation-of-
> powers claim should be treated differently than every other
> constitutional claim, it offers no reason and cites no authority why that
> might be so.**

*Id.* at 3151, n.2 (emphasis added).

Now before this Honorable Court, Defendants argue that they *can* engage

in unconstitutional conduct without meaningful judicial review, *if* they first create

a unilateral administrative record, in a secret proceeding, and *if* they term the

secret codification of that unconstitutional conduct an "order".  In that case,

Defendants argue, they can do whatever they like, and any challenge to their

actions must be based on their unilateral factual record, and only in a court of

appeals, where Plaintiffs are institutionally foreclosed from marshaling any

independent facts to support our case.  Fortunately, the Supreme Court has given

this Honorable Court clear guidance to prevent such an end-run around Plaintiffs'
Fourth and Fifth Amendment rights, and in a series of cases, has repeatedly
refused to limit jurisdiction where the result would deprive Plaintiffs of a chance
to prove their case.

Judicial review provisions that have the practical effect of foreclosing
constitutional claims from meaningful judicial review are unconstitutional, and
thus reading a jurisdictional statute in such a manner is to be avoided. *Free Ent.
Fund*, 130 S. Ct. 3138, 3149-51; *Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 63-64
(1993); *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 492 (1991). In the
case at bench, Defendants seek to foreclose meaningful consideration of all
constitutional claims, simply on the basis of a secret document they call an "SOP",
promulgated internally by Defendants, and which was created without giving the
Plaintiffs, or any other third-party, notice or opportunity to be heard.

In *McNary*, the Supreme Court considered the effect of foreclosing district
court jurisdiction over claims based on unconstitutional agency procedures, by
application of a judicial review statute very similar to 49 U.S.C. § 46110. *Id.* In
*McNary*, plaintiffs brought suit in district court, alleging that INS used procedures
that were constitutionally deficient in denying individual claims of amnesty.
*McNary*, 498 U.S. at 485 & 6. INS sought dismissal of the constitutional claims
on the ground that exclusive jurisdiction over challenges to agency determinations
lay in the United States Court of Appeals. *Id.*, 498 U.S. at 488-9.

The *McNary* Court held that constitutional claims alleging deprivation of due process *are* properly heard in the district court and applied a strong presumption that Congress does not intend to foreclose such claims by statutes prescribing judicial review of agency adjudicative action. *Id.* at 496. The foreclosure of such claims by statute threatened the deprivation of fundamental constitutional rights because, *inter alia* the core of the *McNary* plaintiffs' claims was the deprivation of administrative due process, and as such, there *was no opportunity* to marshal facts and present evidence *for* later judicial review. *Id.* See also *Reno*, 509 U.S. at 63 (construing similar statutes to apply only to adjudicated claims because to do otherwise would "effectively exclude an applicant from access even to the limited administrative and judicial review procedures" provided).

In *McNary*, because the constitutional defects in the administrative process were key to the constitutional claims, the prohibition of district court jurisdiction was "tantamount to a complete denial of judicial review". *McNary*, 498 U.S. at 497. In addition, the type of limited review provided by 49 U.S.C. § 46110 has been found inappropriate when applied to constitutional claims, which are reviewed *de novo* by Article III courts. *Id.* at 493 ("Because the administrative appeals process does not address the kind of procedural and constitutional claims respondents bring in this action [limited judicial review by statutory provision] is not contemplated by the language of that provision").

Case 1:10-cv-00930-WO -WWD   Document 16   Filed 03/17/11   Page 6 of 24

Similarly, in *Reno*, the Supreme Court considered the implications of an INS policy that resulted in applications for legal temporary resident status being summarily rejected by INS pursuant to an unlawful regulation before any administrative proceedings had occurred; INS called this procedure "front-desking". *Reno*, 509 U.S. at 63. This deprivation of *any* access to the administrative process:

> …would also have a further, and untoward, consequence for jurisdictional purposes, **for it would effectively exclude an applicant from access even to the limited administrative and judicial review procedures** established by the Reform Act. He would have no formal denial to appeal to the Associate Commissioner for Examinations, **nor would he have an opportunity to build an administrative record** on which judicial review might be based. Hence, to construe § 1255a(f)(1) **to bar district court jurisdiction over his challenge, we would have to impute to Congress an intent to preclude judicial review of the legality of INS action entirely under those circumstances.**

*Id*. (emphasis added). <u>See also</u> *Id.* 509 U.S. 63 at n. 24.

It is therefore not just a question of whether administrative action might be susceptible to some type of judicial review by an Article III Court, it is a question of whether that review is *meaningful* in the sense that the litigant has an opportunity at some point in the process (either in the administrative proceeding or in the district court) to participate in the creation of a record. Without an opportunity to marshal facts and create a record, a litigant has no chance whatsoever of winning, and thus is denied due process.

In the case at bench, Plaintiffs are claiming rights that will be without a remedy and meaningless if relegated to enforcement in a non-existent or secret

agency "proceeding" that we were never party to, and could not have been a party

to. It is meaningless for Plaintiffs to bring an administrative appeal based on a

process we had no opportunity to be heard in, not to mention one that produced

non-published conclusions based on secret unilateral fact-finding. Thus, where, as

Defendants' argue is the case here, an administrative scheme limits judicial

review, and <u>simultaneously</u> excludes participation in the administrative process, it

is presumed that constitutional claims in particular will not be foreclosed from

district court jurisdiction as that foreclosure itself implicates fundamental rights.

*McNary*, 498 U.S. at 497 (<u>citing</u> *Bowen v. Michigan Academy of Family*

*Physicians*, 476 U. S. 667, 670 (1986)).

The "well-settled" presumption against foreclosure of the types of claims

Plaintiffs bring in this case harks back to the organic caselaw underlying

separation of powers. In *Bowen* the Supreme Court looked back to the bedrock

principles of the United States Constitution considering that:

In *United States v. Nourse*, 9 Pet. 8, 28-29 (1835), the Chief Justice noted
the traditional observance of this right and laid the foundation for the modern
presumption of judicial review:

"It would excite some surprise if, in a government of laws and of principle,
furnished with a department whose appropriate duty it is to decide
questions of right, not only between individuals, but between the
government and individuals; a ministerial officer might, at his discretion,
issue this powerful process . . . leaving to the debtor no remedy, no appeal
to the laws of his country, if he should believe the claim to be unjust. But
this anomaly does not exist; this imputation cannot be cast on the
legislature of the United States."

*Id.*

Which is another way of saying that Congress will not be presumed to undermine "[t]he very essence of civil liberty [which] certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Marbury v. Madison*, 1 Cranch 137, 163 (1803). In order to meaningfully claim the protection of the laws however, individuals cannot be relegated to non-participation in a secret proceeding, wherein claims are foreclosed by an agency whose unilateral findings of fact are entitled to extreme deference in later appellate review.

That type of constitutional "shell game" is exactly what Defendants seek to engage in. Defendants claim that the SOP, which neither Plaintiffs nor this Honorable Court have ever seen, and which is based on administratively determined facts that cannot be discovered or challenged in the Court of Appeals, conclusively bars Plaintiffs from seeking relief from Defendants' unconstitutional searches. Defendants themselves concede that Plaintiffs will have no ability to challenge the factual conclusions (if any) made unilaterally and contained in the "record" Defendants would give the Court of Appeals[3]. *See* Hearing Transcript, Defendant's Exhibit A, at p. 44.

---

[3] In fact, the Honorable District Judge directly asked Defendants' counsel "How does [Plaintiffs' Counsel] make a record to challenge the administrator's SOP?" Defendants' Counsel answered that "the record that will be provided to the Court of Appeals will be similar to a record that is created in an APA case. In APA cases, **the agency is responsible for compiling the record, and that becomes the basis for the Court's decision.**" Defendant's Motion to Dismiss, Ex. A, Hearing Transcript at p. 44, lines 15-18.

This goes far beyond the jurisdictional limitation invalidated in *McNary* as "tantamount to a denial of judicial review" – such a limitation of district court jurisdiction *is* a denial of judicial review. In the case at bench, the result of relegating Plaintiffs to a fictional proceeding with no due process protections is grave indeed because Plaintiffs will have a Fourth Amendment right to be free from unreasonable search and a Fifth Amendment right to vindicate their Fourth Amendment claims, **yet be without a remedy for either violation**. Such a result is untenable and cannot be presumed the will of Congress in enacting 49 U.S.C. § 46110.

If construed as "orders" under 49 U.S.C. § 46110, and thus held immune from review in this Honorable Court, Defendants' actions will deprive Plaintiffs of any meaningful opportunity for Article III review of Defendants' past or proposed actions, any hearing at which to marshal facts and present evidence, or indeed any of the other hallmarks of due process. If Plaintiffs were ever to discover such an "order" before our fundamental rights under the Fourth Amendment are again violated by invasive searches, our access to judicial review would be meaningless because Defendants' findings of fact are entitled to complete deference. See 49 U.S.C. § 46110. Plaintiffs would have the additional hurdles of proving reasonable grounds for failing to seek judicial review within 60 days of the issuance of this secret "order", and failure to timely raise their objections in this secret "proceeding". *Id.* Finally, Plaintiffs will be before a United States Court of Appeals, with no opportunity for discovery, no evidentiary hearings, and no trial.

Cf. *McNary*, 498 U.S. at 497 (exclusive appellate court jurisdiction "is the practical equivalent of a total denial of judicial review of generic constitutional and statutory claims" because appellate courts "lack the fact finding and record-developing capabilities of a federal district court.").

Factual determinations are central to evaluating any Fourth Amendment claim. In reviewing the constitutionality of so-called "administrative searches" such as those at issue in this case, the court must balance the intrusiveness of the search against the effectiveness of the search and the government's need to conduct it. *Illinois v. Lidster*, 540 U.S. 419, 427 (2004). Yet, under the standard of review in § 46110, the government will have almost total freedom to define the weight of the factors on one side of the scale. "The Fourth Amendment does not contemplate the executive officers of Government as neutral and disinterested magistrates….[they] should not be the sole judges of when to utilize constitutionally sensitive means in pursuing their tasks." *United States v. U.S. Dist. Court for E. Dist. of Mich., S. Div.*, 407 U.S. 297, 317 (1972).

It is of course worth noting that Plaintiffs' only remedy for the denial of due process from such limited judicial review is to go back before the TSA for further "proceedings" at the instance of the Court of Appeals. However, such proceedings are non-existent, as Defendants never conducted any "proceedings" in the first place that Plaintiffs could participate in. Unilateral agency fact-finding cannot substitute for Plaintiffs' ability to build our case through discovery and marshalling of facts. Asking that Plaintiffs attempt to vindicate their constitutional

rights in the face of such obstacles proves too much for the courts to countenance, and thus constitutional claims such as Plaintiffs' are presumed properly heard in the district courts and not foreclosed by judicial review statutes pertaining to individual adjudicative proceedings except where those proceedings provide a meaningful set of due process protections to ensure meaningful judicial review. *McNary*, 498 U.S. at 498.

In fact, according to Defendants' tortured reading of the statute, short of suffering a physical injury from Defendants' actions[4], the only way Plaintiffs can receive any sort of due process in an administrative forum would be to walk away from a TSA checkpoint mid-screening and hope that Defendants bring a civil penalty proceeding against Plaintiffs for an $11,000.00 fine as Defendant Pistole has threatened in media interviews. Were Plaintiffs to "bet the farm" in such a proceeding, we would at least be entitled to such due process basics as notice, opportunity for hearing, legal representation, subpoenas and live witness testimony, and a record of the proceedings for further review. See e.g. 49 C.F.R. § 1503.413 (notice); Id. at § 1503.415 (discovery); Id. at § 1503.607 (hearing before an ALJ with various powers). Fortunately for Plaintiffs, the Supreme Court has expressly ruled out such drastic attempts to wrest a measure of due process from

---

[4] Defendants actually suggested that an independent claim of physical injuries would give rise to an alternative action, and would be an acceptable alternative to preventing a constitutional injury in the first place; this was suggested during oral argument of Plaintiffs' Motion for Preliminary Injunctive Relief, and according to counsel for Defendants, would not be barred by § 46110. *See* Hearing Transcript at pp. 44 & 45.

Case 1:10-cv-00930-WO -WWD   Document 16   Filed 03/17/11   Page 12 of 24

an administrative agency. The Supreme Court does not require plaintiffs to "bet

the farm . . . by taking the violative action" before "testing the validity of the

law[.]" *Free Ent. Fund.*, 130 S. Ct. 3138, 3151 (<u>quoting</u> *MedImmune, Inc. v.*

*Genentech, Inc.*, 549 U.S. 118, 129, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)).

## DEFENDANTS' ACTIONS IN THIS CASE DO NOT AMOUNT TO AN "ORDER" WITHIN THE MEANING OF 49 U.S.C. § 46110

49 U.S.C. § 46110 only applies to "orders" issued by the Secretary of

Transportation, including those issued by the Federal Aviation Administration

("FAA") and Transportation Security Administration ("TSA") respecting

individual "persons". 49 U.S.C. § 46110 cannot apply in this case because no

order was ever actually issued that relates to Plaintiffs. Plaintiffs never received

notice as required by 49 U.S.C. § 46103, or any opportunity to be heard, nor have

they ever been served with an "order" pursuant to 49 U.S.C. § 46105. Unlike

other forms of agency action, orders must be issued following some form of

administrative proceeding in which interested parties may participate. Section

46110(d) provides:

In reviewing an order under this section, the court may consider an
objection to an order of the Secretary, Under Secretary, or Administrator **only if
the objection was made in the proceeding conducted by the Secretary, Under
Secretary, or Administrator** or if there was a reasonable ground for not making
the objection in the proceeding.

49 U.S.C. § 46110 (emphasis added).

Only the Ninth Circuit has recognized an exception to the notice

requirements of § 46105, but that exception is no help to the Defendants here. In

*Gilmore v. Gonzales*, the court held that security directives issued under 49 U.S.C. § 114(l)(2) are final orders because the statute explicitly allows directives to be issued "without providing notice or an opportunity for comment." 435 F.3d 1125, 1131 n.4 (9th Cir. 2006). However, at oral argument, Defendants' counsel stated that the SOP at issue in this case is not a security directive, but that security directives "are parallel to standard operating procedures." Hearing Transcript, at p. 30 line 15. Defendants' position on exactly what an SOP is remains murky, but Defendants' counsel makes clear the SOP is not a "security directive." Hearing Transcript, pp. 30-32

A cursory review of 49 U.S.C. Chapter 461 illustrates the context in which 49 U.S.C. § 46110 was enacted. The Chapter begins with a discussion of administrative enforcement actions, and mandates certain adjudicative proceedings, admissible evidence and permitted enforcement actions. See 49 U.S.C. §§ 46101 (commencement of proceedings, notice), 46102 (appearance, representation by counsel, recording), 46103 (designated agents and service of process), 46104 (evidentiary procedures including notice), 46105 (service of orders on parties), 46106 (enforcement in the U.S. District Courts). Thus, by its own terms, 49 U.S.C. § 46110 was always intended to refer to adjudications of individual cases brought by or before the agency, by or against individuals or a discrete class of persons. There is indeed no other way to reconcile the statutory requirement that any such "order… shall be served on the parties to the proceeding and the persons affected by the order." 49 U.S.C. § 46105 (2010). 49 U.S.C. §

46105(c) goes on to specifically call out *both* "regulations" and "orders", showing that Congress never intended the two terms to be conflated in the judicial review provision 49 U.S.C. § 46110.

Indeed, the TSA itself has construed § 46110 as applicable only to the civil penalty provisions of 49 CFR § 1503. See 49 C.F.R. § 1503.400 *et seq.*. No other TSA regulations reference § 46110 in the context of broad based regulatory actions, much less provide a procedure by which Plaintiffs might be given any due process to vindicate their rights prior to the issuance of such an "order".

Indeed, as Defendants point out, one necessary requirement for orders is that they "impose an obligation, deny a right, or fix some legal relationship." (Def.'s Mem. 12) (quoting *Aerosource, Inc. v. Slater*, 142 F.3d 572, 578 (3d Cir. 1998)). Defendants then ask this court to avoid the express statutory command that dictates that affected parties must receive notice that the obligation, denial of right, or legal relationship has been extended to them. In effect, Defendants wish to define an order as imposing an obligation on parties and then refuses to tell those parties what that obligation is. A law that no citizen can review, but must comply with, is antithetical to democracy.

Even clearer evidence of Congress' intent in the meaning of an "order" under § 46110 is found in the very next section, § 46111, which discusses the due process protections which must be provided to "a citizen of the United States" subject to an "order" of the administrator of the FAA, including a "hearing on the record" and an administrative appeal before a review panel having "access to all

relevant documents", and culminating in judicial review "of the order under section 46110". 49 U.S.C. § 46111 (2010). In the case at bench, Plaintiffs were never subject to an "order" within the meaning of § 46110.

## A REVIEW OF CASELAW DEMONSTRATES THAT "ORDERS" SUBJECT TO 49 U.S.C. § 46110 ONLY FOLLOW ADJUDICATIONS OF INDIVIDUAL CASES

An "order" under 49 U.S.C. § 46110 necessarily follows an individual adjudicative proceeding. Cases involving 49 U.S.C. § 46110 relied upon by Defendants involve individuals or groups seeking judicial review of their individual cases that were actually adjudicated by the agency. See, e.g., *Boniface v. United States Dep't of Homeland Sec.*, 613 F.3d 282, 284 (D.C. Cir. 2010) (appeal of denial of Boniface's request for waiver from individual TSA threat assessment following significant adjudicative proceedings); *Ibrahim v. DHS*, 538 F.3d 1250 (9th Cir. 2008) (individual placed on "No-Fly" list and refused redress)(held 49 U.S.C. § 46110 inapplicable on other grounds); *Zoltanski v. FAA*, 372 F.3d 1195, 1196 (10th Cir. 2004)("the **ALJ held a two-day evidentiary hearing** at which Zoltanski, Badu, Avila, and Rose, among other witnesses, testified. **After the hearing the parties filed closing briefs**, and Zoltanski again moved to dismiss the complaint"); *Mace v. Skinner*, 34 F.3d 854, 858 (9th Cir. 1994) (FAA mechanic's certificate revocation proceeding); *Tur v. FAA*, 104 F.3d 290, 292 (9th Cir. 1997) (FAA revocation of Tur's "airman certificate"); *Aerosource, Inc. v. Slater*, 142 F.3d 572, 575-7 (detailing extensive individualized rulings and agreements between FAA and the plaintiff company); *Green v.*

*Brantley*, 981 F.2d 514 (11th Cir. 1993) (revocation of Designated Pilot Examiner certificate); *Atorie Air, Inc. v. FAA*, 942 F.2d 954, 955 (5th Cir. 1991) ("a principal operations inspector of the FAA, advised Atorie that it was in violation of federal aviation safety regulations" and subject to certificate revocation); *Nevada Airlines, Inc. v. Bond*, 622 F.2d 1017, 102(9th Cir. 1980)(per curiam)("On May 23, 1980, the air carrier operating certificate of Nevada Airlines, Inc., was revoked"); *City of Alexandria v. Helms*, 728 F.2d 643, 645 (4th Cir. 1984) ("in accordance with its regulations, the FAA prepared an environmental assessment of the test which it published on May 31, 1983, **and distributed to 200 people, including the Alexandria City Manager. Public comment on the assessment was received**… and a response to that comment was published…") (emphasis added); *Gaunce v. deVincentis*, 708 F.2d 1290 (7th Cir.) (per curiam), cert. denied, 464 U.S. 978, 78 L. Ed. 2d 354, 104 S. Ct. 417 (1983) ("F.A.A. sent notice to appellant informing her of the proposed revocation of her Airman Certificate"). Indeed, Defendants rely heavily on *City of Alexandria* to support their interpretation of section 46110, but in that case the court noted that an "order" comes "at the **consummation** of the administrative process" 728 F.2d at 646 (emphasis added).

All of these cases involve individuals seeking to remedy a *specific individualized claim* regarding agency action for which they were allegedly denied redress in an adversarial agency proceeding culminating in an adverse decision to the party. Presumably, those individuals received due process for their claims in

the proceeding before the agency, after they were each given notice of the agency proceeding and before such an "order" issues to them under the service provisions of 49 U.S.C. § 46105. If the facts and circumstances in those cases were otherwise, the grave constitutional issues caused by a complete denial of due process as in *McNary*, *Free Enterprise Fund*, and *Reno*, would have required a different result. Here, none of the jurisprudential concerns of relitigation of issues heard and decided in an administrative proceeding are present. See e.g. *Americopters LCC, v. F.A.A.*, 441 F.3d 726, 736–38 (9th Cir. 2006) (holding that the "inescapably intertwined" doctrine does not bar damages claims where there is no prior administrative proceeding, no possibility of relitigation, and no evasion of established administrative remedies); *Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565, 572 (5th Cir. 2001) (explaining in a *Bivens* context that the "inescapably intertwined…holdings are based on the principle that plaintiffs should not be able to circumvent administrative review through suit in federal court.") (citation omitted); *Mace*, 34 F.3d at 859 (allowing a broad constitutional challenge to go forward where there is no danger of relitigating the merits of a prior adjudication).

Indeed, Defendants' heavy reliance on the unpublished decision in *Thomson v. Stone*, attached to their Response to Plaintiffs' Motion for Preliminary Injunctive Relief (Doc. No. 4) and cited again in their brief, is a graphic illustration of the danger of district courts assuming that any of Defendants' actions are "orders" within the meaning of 49 U.S.C. § 46110. *Thomson v. Stone*, 2006 WL 770449 (E.D.Mich.) (Defendants' Response in Opposition to Plaintiff's

Motion for Preliminary Injunctive Relief, at Exhibit F). Clearly without much consideration, the *Thomson* Court relied on a 1975 Sixth Circuit Decision, *Robinson v. Dow*, and stated that according to *Robinson*, Plaintiff Thomson would get plenty of due process before the TSA to vindicate her constitutional claims. *Id.* at *4 (<u>citing</u> *Robinson*, 522 F.2d at 858). However, Robinson was a pilot who had his license revoked in an emergency proceeding, was given prompt notice of the revocation and was then granted not one, <u>but two</u>, on the record proceedings, the first before an ALJ, and the second before the full NTSB. *Robinson v. Dow*, 522 F.2d 855, 858 (6th Cir.1975). Plaintiffs do not dispute that Robinson was subject to an "order" that may constitutionally fall within the ambit of 49 U.S.C. § 46110. However, such individualized "orders" come with their own due process protections as the Sixth Circuit in *Robinson* lays out in substantial detail. *Robinson*, 522 F.2d at 856-8. The district court in *Thomson* makes a grave error in assuming that Plaintiff Thomson would receive the same due process protections before the TSA as Plaintiff Robinson was afforded in proceedings before the FAA and NTSB.

Plaintiffs in the case at bench are subject to no such individualized "order", but instead seek to enjoin Defendants from conducting an unconstitutional search procedure, and further seek a remedy for the denial of due process inherent in Defendants' actions. It is crucial to this Court's analysis that, unlike the airline corporations, pilots, mechanics, aircraft inspectors, local governments, and hazardous materials carriers, discussed at length in the precedents relied on by

Defendants, Plaintiffs here have no meaningful alternative forum in which to marshal any facts. Unlike those with an opportunity to build a case in the agency record to vindicate their rights, Plaintiffs will have rights without a remedy if subjected inappropriately to jurisdictional limitations as prayed for by Defendants.

The Supreme Court has refused to accept that all agency action is immune from meaningful judicial review just because certain agency actions require exhaustion of administrative remedies and review in a certain forum. *McNary*, 498 U.S. at 504. The key test is whether the agency's alternative to litigation in district court provides a meaningful forum for vindicating their constitutional rights. *Id.* ("We do not see how petitioners could meaningfully pursue their constitutional claims under the Government's theory" and therefore <u>holding</u> exclusive judicial review provisions inapplicable to broad constitutional claims).

In addition, courts have determined that important constitutional challenges to agency action belong in the district courts, even where an agency has adjudicated the matter. See *Mace*, 34 F.3d at 859 ("any examination of the constitutionality of the FAA's revocation power should logically take place in the district courts, as such an examination is neither peculiarly within the agency's 'special expertise' nor an integral part of its 'institutional competence'").

## UPON CLOSER REVIEW, THE HONORABLE DISTRICT JUDGE'S TENTATIVE RELIANCE ON *CITY OF TACOMA* WAS NOT CORRECT

Defendants have attempted to capitalize heavily on the Honorable District Judge's tentative reliance on *City of Tacoma v. Taxpayers of the City of Tacoma*,

357 U.S. 320 (1958), for the principle that a decision on jurisdiction had already been made.  In fact, the Honorable District Judge expressly declined to dismiss this action *sua sponte*, and again declined to dismiss this action after oral argument of Plaintiffs' Motion for Preliminary Injunction.  *See* Hearing Transcript at pp. 58 & 59.  The Court found that further briefing of the issues was required, and only tentatively relied upon *City of Tacoma*, for the principle that Congress may limit the jurisdiction of the lower federal courts.  However, *City of Tacoma* is distinguishable from the case at bench in key ways that make its application here inappropriate.

In beginning its opinion, the Supreme Court noted that the opinion resolved only "the latest episode in litigation beginning in 1948 which has been waged in five tribunals and has produced more than 125 printed pages of administrative and judicial opinions."  *Id.* at 323.  The Court then goes on for *ten pages* to detail the long history of the case prior to its arrival before the Supreme Court.  *Id.* at 323-33.  The Supreme Court's final conclusion, that Congress may limit the jurisdiction of the lower federal courts where a party is merely seeking to relitigate an issue that was the subject of an administrative proceeding, is not at issue in the case at bench.  What *is* at issue in this case, and *was not* at issue in *City of Tacoma*, is whether Congress may be presumed to countenance the complete absence of an opportunity to vindicate an individual constitutional right.  Although "Congress has the undoubted power to give, withhold, and restrict the jurisdiction of courts other than the Supreme Court, it must not so exercise that power as to

deprive any person of life, liberty, or property without due process of law. . . ." *Battaglia v. Gen. Motors Corp.*, 169 F.2d 254, 257 (2d Cir. 1948) (<u>citing</u> *Graham & Foster v. Goodcell*, 282 U.S. 409, 431 (1931)). "In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the **independent determination of all questions, both of fact and law,** necessary to the performance of that supreme function." *Crowell v. Benson*, 285 U.S. 22, 60 (1932) (emphasis added). For this reason, the Honorable District Judge's preliminary discussion of this issue inappropriately relied on *City of Tacoma Taxpayers*, and may thus be revisited in this Honorable Court's Report and Recommendation.

Case 1:10-cv-00930-WO -WWD Document 16 Filed 03/17/11 Page 22 of 24

## CONCLUSION

This Honorable Court has been properly presented with Plaintiffs' claims arising under Amendments Four and Five to the United States Constitution. This Honorable Court has jurisdiction over Plaintiffs' claims; claims for which there is no other meaningful forum or relief available.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court issue its Report and Recommendation, recommending that:

Defendants' Motion to Dismiss be denied, or

in the alternative, in lieu of dismissal of Plaintiffs' Complaint, this action be transferred to the Court of Appeals under 28 U.S.C. § 1631.

Respectfully submitted this the 17th day of March, 2011.

/s/ Jonathan Blitz
Jonathan Blitz
*Pro Se* and Attorney for
Plaintiffs Marla Tuchinsky and EB
Missouri Bar No. 53841
Illinois Bar No. 6278978
North Carolina Bar No. 33071
P.O. Box 61764
Durham, NC 27715
Tel. 919.323.2777
Email **blitzlaw@gmail.com**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION**

| | | |
|---|---|---|
| JONATHAN BLITZ, | ) | |
| MARLA TUCHINSKY, and as legal | ) | |
| guardians of EB their minor child, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:10cv930-WO-WWD |
| | ) | |
| vs. | ) | |
| | ) | |
| The Honorable Janet Napolitano, | ) | |
| and | ) | |
| The Honorable John S. Pistole | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted this the 17th day of March, 2011.

_____/s/ Jonathan Blitz___
Jonathan Blitz
*Pro Se* and Attorney for
Plaintiffs Marla Tuchinsky and EB
Missouri Bar No. 53841
Illinois Bar No. 6278978
North Carolina Bar No. 33071
P.O. Box 61764
Durham, NC  27715
Tel. 919.323.2777
Email **blitzlaw@gmail.com**
